Donald J. Sullivan, Esq.
WSB # 5-1485
Sullivan Law Offices, P.C.
2103 Evans Ave.
Cheyenne, WY 82001
(307) 634-0112 Attorney
for Plaintiff

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2024 APR 18 PM 5:35

MARGARET BOTKINS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT

## DISTRICT OF WYOMING

| | |
|---|---|
| **ANDREW KIROL,** | )<br>) |
| Plaintiff, | )<br>)   Civil No. 24CV81-R |
| vs. | )<br>) |
| **UNION PACIFIC RAILROAD**<br>**COMPANY,** a Delaware Corporation. | )<br>)   **COMPLAINT (FELA and LIA)**<br>) |
| Defendant. | ) |

Plaintiff, Andrew Kirol, complaining against Defendant, Union Pacific Railroad Company alleges the following:

### I.

### Parties

1. Plaintiff Andrew Kirol is a Wyoming citizen and a resident of Pinedale, Wyoming.

2. Defendant is a railroad, incorporated in a State other than Wyoming, which at all material times was doing business as a common carrier by rail engaged in interstate commerce, including business in and through the State of Wyoming and in this Federal District.

3. At all relevant times Plaintiff was employed by Defendant, Union Pacific Railroad Company, as a railroad Locomotive Engineer.

## II.

### Jurisdiction

4. This Court has jurisdiction of the matter pursuant to 45 U.S.C. § 51, *et seq.*, commonly known as the FEDERAL EMPLOYERS' LIABILITY ACT (FELA). The provisions of this Act control the rights and liabilities of the parties. Plaintiff avails himself of the rights, benefits, and immunities afforded him by this statute.

## III.

### Venue

5. Venue is proper in this court because all acts forming the basis of Plaintiff's allegations took place in the State of Wyoming and in this Federal District. 45 U.S.C. § 56.

## IV.

### Facts Underlying Liability

6. On or about May 3, 2021, Plaintiff, as Defendant's employee, was actively working as a railroad Locomotive Engineer, operating a train in and through the State of Wyoming, in or near Sweetwater County, in this Federal District close to railroad milepost 858.

7. The train, including the locomotives and the systems for controlling the operation of the several locomotive engines of the train, was under the direct and exclusive control of Defendant and of Defendant's agents, servants, and employees except the Plaintiff who was solely charged with running the train according to his training, Union Pacific rules, and direct orders from his Union Pacific management team.

8. Defendant had installed upon the locomotives it required Plaintiff to use on the day of this incident a computer software system known to the Defendant as the L.E.A.D.E.R. system, the purpose of which was to control the locomotives on the trains without input from the Locomotive Engineer and to "learn" from artificial intelligence programming how to control the movements of the trains over various tracks, terrains, and territories.

9. Defendant UPRR, through its managers and its supervisors required, ordered, and compelled under threat of discipline, the Plaintiff, to operate locomotives and trains that were supposed to be controlled by the L.E.A.D.E.R. system, including the locomotives involved in this incident.

10. On the date of this incident, Plaintiff was required by the Defendant to operate a train hauling freight on its main line tracks. Plaintiff was ordered to use the L.E.A.D.E.R. system in operating the train.

11. The train, which was quite lengthy, was to traverse a territory that presented hills, valleys, and other challenges to the safe operation of the train.

12. The train was configured such that there was a lead locomotive in which the Plaintiff was positioned as the Locomotive Engineer with another locomotive approximately halfway towards the rear of the train of railroad cars. This locomotive was uncrewed and located in that position solely to provide extra motive power for the train. This "middle" locomotive was normally controlled remotely by the Locomotive Engineer in the cab of the lead locomotive but at the time of the incident, all locomotives on this train were within the sole control of the L.E.A.D.E.R. system without input or control from the Plaintiff, the Locomotive Engineer.

13. On or about May 3, 2021, as the train on which Plaintiff was required to work as Locomotive Engineer approached Green River, Wyoming, the L.E.A.D.E.R. system on this train gave incorrect, inconsistent, contradictory, and dangerous instructions to the locomotive engines powering the train.

14. As the train ascended a hill, the L.E.A.D.E.R. system caused the lead locomotive to reduce speed and for the locomotive positioned in the middle of the train to increase its speed simultaneously, a circumstance which no competent Locomotive Engineer would have allowed to arise under the circumstances.

15. These commands, given to the locomotives by the L.E.A.D.E.R. system, which the Plaintiff could not control, resulted in the middle locomotive violently pushing the cars between it and the lead locomotive towards the head of the train and into the locomotive where the Plaintiff was situated. This caused a "rear ending" of the Plaintiff's locomotive with significant speed and force. This is also known in the railroad industry as a "slack action" incident, of a sort.

16. Plaintiff was violently thrown about the locomotive seat and cab, causing injuries to his lower back and other parts of his body.

17. As a result of this incident, Plaintiff has suffered damages in excess of the jurisdictional amount of this Court.

## V.
### Negligence

18. Defendant UPRR, acting at all relevant times by or through its officials, agents, servants, borrowed servants, and employees, was negligent in causing the Plaintiff's injury, in whole or in part, including without limitation the following particulars:

    a) Defendant failed to provide Plaintiff with a reasonably safe place to

work;

      b) Defendant failed to provide Plaintiff with safe and proper tools and appliances with which to perform his work, including safe, proper, and efficient locomotives with which to work;

      c) Defendant assigned Plaintiff to work in a situation or condition which it knew, or in the exercise of reasonable care should have known, was likely to cause Plaintiff injury or to aggravate a prior injury or condition;

      d) Defendant failed to inspect the locomotives, and the performance of the control systems installed thereon where it assigned the Plaintiff to work, to ensure that the locomotives and train he was assigned to work with and on were reasonably safe and free of defects;

      e) Defendant failed to warn the Plaintiff of hazards present on the locomotives to which he was assigned to work;

      f) The Defendant required the Plaintiff to work in a situation wherein he was put at unreasonable risk of injury;

      g) Defendant violated its non-delegable duty not to expose the Plaintiff to unreasonable risks of harm, including its duty not to assign him to work beyond his capacity, under unsafe conditions, or with unsafe equipment;

      h) Defendant negligently assigned the Plaintiff to work duties requiring him to work with locomotives and a train when it knew or should have known such duties exposed the Plaintiff to an unreasonable risk of harm; and,

      i) Defendant UPRR failed to adequately train and supervise the Plaintiff on the operation of the L.E.A.D.E.R. system which it installed upon its locomotives and which it ordered and required Plaintiff to use in the ordinary course of his work for the Defendant, particularly on the day of this incident.

## VI.

## Locomotive Inspection Act (LIA)
### Negligence Per Se

19. Plaintiff reiterates and incorporates every allegation made above as if re-stated here verbatim.

20. On or about May 3, 2021, and at all other relevant times, a statute of the United States of America known as the Locomotive Inspection Act, 49 USC § 20701, was in full force and effect. The "LIA" provides in pertinent part:

> "A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances —
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

>      (3) can withstand every test prescribed by the Secretary under this chapter.

21. The locomotives involved in this incident were "in use" by the Defendant as contemplated by this Act; and violated, the requirements of 49 USC § 20701.

22. As a result of Defendant's violation of the LIA by failing to comply with its requirements, the software installed in the locomotives, without input from the Plaintiff or any other human source, caused the lead locomotive to decrease in speed while simultaneously increasing the speed of the locomotive in the middle of the train. Thus, suddenly and without warning, caused the slack spaces between the cars to compress violently, essentially "rear-ending" the lead locomotive and proximately causing the Plaintiff's injuries complained of herein.

23. 45 U.S.C. § 53, provides in pertinent part:

> "[N]o such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

24. The common law and any statutory defenses of contributory negligence or comparative fault are unavailable to the Defendant as a matter of law because of its clear violation of this safety statute intended to protect employees such as the Plaintiff.

## VII.

### Causation

25. As a direct and proximate cause, in whole or in part, however slightly, of the Defendant's negligence and negligence *per se* the Plaintiff incurred the injuries and damages alleged herein.

## VIII.

### Damages

26. Prior to this subject incident, Plaintiff was a strong and able-bodied man who fully performed his assignments as required by Defendant. Plaintiff is unaware of any weaknesses or infirmities that were present before his injury, but if any were present, the Defendant's negligence caused them to be activated by the trauma to Plaintiff's body.

27. Because of the Defendant's negligence, and violations of the LIA, Plaintiff has suffered and will continue to suffer damages in the following particulars:

a) Plaintiff has undergone medical treatments and has sustained physical impairments in the past;
b) Upon information and belief Plaintiff will need medical treatments and have physical impairments into the future;
c) Plaintiff has sustained physical pain and suffering in the past;
d) Upon information and belief Plaintiff will continue to experience physical pain and suffering for an indefinite time into the future, probably permanently;
e) Plaintiff has sustained mental and emotional pain, anguish, and suffering in the past;
f) Upon information and belief Plaintiff will continue to suffer mental and emotional pain, anguish, and suffering for an indefinite time into the future, probably permanently;
g) Plaintiff has incurred medical bills in the past, including prescription drugs and appliances as needed for treatment of his injuries;
h) Upon information and belief Plaintiff will continue to incur medical bills for an indefinite time into the future, probably permanently;
i) Plaintiff has sustained lost benefits and lost wages in the past, the amount of which will be calculated and presented at trial;
j) Upon information and belief Plaintiff will continue to suffer lost benefits and lost wages over his future work life, the amount of which will be calculated and presented at trial;
k) Plaintiff has suffered the loss and diminution of his earnings, fringe benefits, and his earnings capacity in the past;
l) Upon information and belief Plaintiff will suffer the loss and diminution of his earnings, fringe benefits, and his earnings capacity into the future, probably permanently; and,
m) Plaintiff has incurred costs and expenses to maintain this action that he is entitled to recover.

**WHEREFORE** Plaintiff prays the Court to enter judgment in his favor in such amount as the trier of fact may determine to be just and proper; his court costs; post-judgment interest; and all such other relief, both general and special, as may be just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Dated this \_\_\_\_th of April, 2024.

                                              Andrew Kirol, Plaintiff, by:

                                              */s/ Donald J. Sullivan*

                                              Donald J. Sullivan, Esq.
                                              Sullivan Law Offices, P.C.
                                              2103 Evans Ave.
                                              Cheyenne WY 82001
                                              (307) 634-0112
                                              Attorney for Plaintiff